60662 Hopkins v. Secretary of State Hosemann and your Ms. Noble. May it please the court. Chrissy Noble for the Secretary of State in his official capacity. This cross appeal pursuant to section 1292B stems from constitutional challenges to Mississippi's disenfranchisement and reenfranchisement laws. The district court correctly dismissed both of plaintiffs constitutional challenges to article 12 section 241 which provides for felon disenfranchisement for certain disqualifying offenses. The district court also correctly dismissed two of the three constitutional challenges to article 12 section 253 of the Mississippi Constitution which provides one of the state's discretionary mechanisms for felons to regain suffrage. The district court erred though with respect to a single claim and that's by not rejecting as a matter of law plaintiff's race-based equal protection challenge to section 253. I thought that issue was not before us. The race-based equal protection challenge? Right. Oh, I'm sorry. That's the 241 that's not before us. Yes. Right. Let me, and if I may clarify just one more point. The 241 challenges from the Hopkins plaintiffs are before you but not the race-based 241. The district court actually erred as to the race-based equal protection challenge to section 253 for a jurisdictional and a substantive reason and that's where I'd like to start with the claim that the district court should have dismissed as a matter of law before moving to the claims that the district court properly rejected. Section 253 provides one of the state's discretionary mechanisms for felons to regain suffrage through suffrage bills passed by the Mississippi legislature. Section 253 does not detract from the gubernatorial pardon. Instead it provides an additional avenue for vote restoration even though under federal law no avenue is required at all. The Mississippi constitution constitutionally commits the enforcement of section 253 to the Mississippi legislature. Because of this, the secretary of state as an executive branch official cannot and does not enforce section 253. So in joining the secretary of state to enforce section 253, not to enforce section 253 or to enforce that law differently will not remedy plaintiff's injury. The district court, however, if you look at page 4864 and 65 of the record, found that standing was quote unquote minimally satisfied for purposes of section 253 but the court erred in a twofold way. First, the court did not consider the plaintiff's injury or did not consider causation and redressability in the context of the plaintiff's injury and did not consider standing in the context of the quote form of the relief salt which is a requirement by the Supreme Court in cases like Dame or Chrysler. It's also a requirement of this court if you look at KP2, especially in footnote 49 of that decision where the court talks about how standing is not dispensed and gross. So you do have to look at the claims separately. And so if you look at what the district court said, the district court found standing for 253 because the secretary of state in really a clerical way keeps electronic custody of the statewide voter roll and then changes to that voter roll would be made by local officials if and after a convicted felon receives a suffrage bill from the Mississippi legislature. But here's where the court erred. The plaintiff's injury for purposes of section 253 has nothing to do with what happens if and after a convicted felon receives a suffrage bill from the Mississippi legislature. Instead, the plaintiff's injury for purposes of section 253 is the quote unquote burden imposed by section 253's legislative process. And if you look on the record side at page 60, it's plaintiff's claim, plaintiff's complaint. And they ask for relief for section 253 in only one way. And that's for a declaration that section 253's quote unquote legislative process violates the equal protection clause and the first amendment. So when you properly view the injury and standing for 253 in the context of the form of the or not enforce section 253, will for all practical purposes be meaningless, just as meaningless in fact as in Oakpillope. And in fact, you can think about it this way. If this court enjoins section 253, no convicted felon will receive a suffrage bill. No convicted felon will be reenfranchised. And the Secretary of State as an executive branch official cannot tell the legislature a separate branch of government to grant a suffrage bill or to change their criteria for doing that. And you can see this point actually in the majority opinion in Oakpillope on page 427, where the court says that a state official cannot be enjoined to act in a way which is outside that official's authority to act in the first place. So here, because there is no standing for purposes of the section 253 claims, the district court should have dismissed them on a jurisdictional basis. Separately, because the Secretary of State does not enforce section 253, he doesn't have some connection to the enforcement of it either. And the claims would be barred by the 11th amendment too. But the claims are actually barred substantively as well. The race-based equal protection challenge to section 253 fails on the merits and as a matter of law. Section 253 does not deny any convicted felon the right to vote. It's a constitutional provision that authorizes, but does not mandate, the Mississippi legislature to exercise its discretionary authority to grant a suffrage bill. Have the plaintiffs alleged that the legislature applied this re-enfranchisement possibility unequally? No, Your Honor. There is no proof, and there's no allegation, let alone any proof. And that's the flaw in the district court's order. So the district court found fat questions as to the original intent of the law, because it was originally enacted in 1890. But the district court never either analyzed, let alone found, that there was any present-day unconstitutional effects from section 253, or to your point, Judge Jones, that there was any unconstitutional application of the law in present day. But Hunter v. Underwood was not just concerned about the original enactment of the law. In fact, if you look at pages 227 and 233 of Hunter, it talks about the present-day effects of the law, and it talks about the present-day operation of the law. And in fact, Judge Jones, in your opinion, in Cotton, this court did as well. If you look at footnote 9 of the Cotton decision, this court says, quote, Hunter requires unconstitutional effects as well as motive, end quote. And the plaintiffs here basically admit that they don't have any present-day proof of any unconstitutional effects of the law. And because of this, they try to circumvent their burden. And they say that as convicted felons, they are, quote, unquote, subject to section 253 in the first place. But this has at least three primary flaws. First, if that was- Can you explain your entire argument on 253? They have three claims as to 253. But no, Your Honor. I will move to 241 as well. Well, I just point out that you've used two-thirds of your time, so. Yes, Your Honor. And I will conclude by saying this. No unconstitutional effects, no unconstitutional present-day application of 253. And that claim fails as a matter of law. The district court, however, correctly dismissed all of the remaining challenges to 253 and 241. And where I want to start is the exact point that the plaintiffs have led with at every instance in this case, including in their reply brief, and that's this. The state's position is not, and Chief Judge Jordan did not hold, that no constitutional limitations apply to disenfranchisement and re-enfranchisement. Instead, the district court held what every other court has held, and that's that the And so what you've got to start with, for purposes of the 241 claim, is what Section 2 of the 14th Amendment affirmatively sanctions. And as construed by the Supreme Court in Richardson v. Ramirez, Section 2 of the 14th Amendment affirmatively sanctions permanent disenfranchisement for any felony. Because of this, the Eighth Amendment doesn't bar permanent disenfranchisement for any felony. That is, the Eighth Amendment doesn't render Section 2 of the 14th Amendment inoperative. You can see the same type of analysis with respect to the First Amendment. Convicted felons who have already lost their right to vote pursuant to a state's valid exercise of the affirmative sanction in Section 2 of the 14th Amendment do not still have a constitutionally protected right to vote under the more general terms of the First Amendment. But that doesn't mean that no constitutional limitation applies. That's why we have cases like Cotton. That's why we have cases like Hunter. But it does mean that Section 2 of the 14th Amendment affirmatively sanctions permanent disenfranchisement for any felony. And that's why Plaintiff's next claim, which is the non-racial equal protection challenge to Section 241, fails. Because it attempts to overrule binding precedent from this Court in Shepard, as well as Cotton, as well as Supreme Court precedent in Richardson v. Ramirez. Plaintiff's claim for their 241 equal protection is that you cannot permanently disenfranchise after the completion of a sentence. And if you do, that the law is subject to strict scrutiny. The problem is exactly what the district court said. And that's that the plaintiffs in Richardson v. Ramirez said the same thing. All of the felons in Richardson v. Ramirez had completed the terms of their sentence and had committed a wide variety of felonies, which you can see in footnote 9. The argument there was that those felons could not be disenfranchised. The Supreme Court rejected that claim and it said, quote, the exclusion of felons from the vote has an affirmative sanction in Section 2 of the 14th Amendment. The Court also said that its holding was grounded in the express language. This Court has reiterated that in Shepard. And I can't put it better than this Court. If you look at page 114 and 115 of Shepard, the Court says, quote, that a state properly has an interest in excluding from the franchise persons who have manifested a fundamental antipathy to the criminal laws of the state or the nation. By violating those laws, it's officially important to be classified as felonies. End quote. No court has retreated from Richardson or Shepard and their claim fails for that reason. The next claim plaintiffs have is back to 253. And that's the non-racial equal protection challenge to Section 253. A discretionary reenfranchisement system is not facially unconstitutional under the Equal Protection Clause. You can see this as a starting point in Beecham v. Brederman. There, a convicted felon challenged the purely discretionary manner in which Florida officials made reenfranchisement decisions. A three-judge panel rejected that. The Supreme Court summarily affirmed. And the Supreme Court in Richardson v. Ramirez actually cited favorably to the Beecham decision. You can see this in Connecticut Board of Pardons v. Dumpshat as well. There, a clemency applicant challenged a statute that gave to the Board of Pardons quote-unquote unfettered discretion in granting clemency decisions. The Supreme Court rejected that claim too. And what you see from these cases is this. If you do not have a right to the procedures, the point of which is to curb discretion, you clearly don't have the right to challenge the decision as discretionary. In fact, there is broad discretion to grant clemency even when life is at stake. You can see that in the Eleventh Circuit's decision in Smith v. Snow. You can also see that in this court's decision in Garcia v. Jones from 2018, Judge Dennis, which is a decision that you were on the panel. And think about that for a moment. Quite literally, every single right conceivable is at stake for that clemency applicant. But a purely discretionary clemency regime, even when life is at stake, doesn't violate the 14th Amendment. The last point I'll make about this, because I see I'm running out of time, is plaintiffs say that the decision-making is different here because it's by legislative officials. I'll point this court to footnote 2 of the Dumchat decision. In that case, the district court had been a little critical of Connecticut because Connecticut there actually placed their clemency decisions in a Board of Pardons as opposed to the governor, and the Board of Pardons was actually legislatively created. That did not matter for the Supreme Court's decision. Instead, the focus is on the fact that it is a clemency-type decision or a species of a clemency-type decision. That is, the focus is not on the official making the decision. It is the decision made by the official. And I see I'm almost out of time. I would like to reserve for rebuttal to address the remainder of plaintiff's claim. All right. Thank you very much. Yes, good morning, Your Honor, and may it please the court. I'm here on behalf of 29,000 Mississippi citizens who are permanently barred from voting because they were previously convicted of felonies, notwithstanding the fact that many of them completed their sentences long ago. Their jail time is over, their probation is over, the parole is over, but their punishment continues. Their disenfranchisement, enforced at every step by the Secretary of State— Let me clarify just one thing. Are you talking about all felons, including those currently incarcerated, or all felons who have served their sentences, whether for murder or for theft? The case does not apply to incarcerated felons. So even if they committed murder and rape and so on and served their sentence, you're trying to reenfranchise them? Well, Your Honor, I'm not sure there are that many who have been convicted of murder who have finished their parole, and I think what the standards actually line up is that the length of the sentence when you couple in probation and parole is the state's judgment as to what the proper punishment is, and when that ends, it ends. What you get to, though, is a point that's made in the state's summary judgment papers and in their papers on appeal, which is effectively perhaps it is cruel and unusual punishment for some crimes and not for others. I will tell you that the six plaintiffs who are the named plaintiffs in this case, none of them are convicted of crimes of the nature that you just outlined. Well, you're still suing on behalf of a class. Of course I am, Your Honor. And I don't want to waste all your time. I just wanted to get that straight. We are suing on behalf of the class of anyone who has completed their sentence. That is correct. Not incarcerated, but it does include all folks who have completed regardless of what the crime is. If it's a disenfranchising crime, what the remedy is and what the result is can be something for the district court if there are some crimes that are deemed to be cruel and unusual and some that are not. Well, let's just cut to the quick here because despite the length of the argument made by your opponent, we have these problems from your standpoint which consist of Richardson v. Ramirez, Cotton v. Fordyce, Hunter v. Underwood and Shepherd v. Trevino because you do have to argue around all those cases. I have to consider all those cases and I have to consider Richardson first of all, for sure, Your Honor. I will say for Cotton, that if it applies at all, it applies only to the fifth claim in the case which is the sole race-based claim in the 253 claim. It does not apply in most of the other sites that you gave. Do not apply to 241. Richardson does. And this court and other circuit courts adherence to Richardson in the 50 years, almost 50 years since it was issued is something that we deal with directly and we think properly. And the analysis begins, I think, with the Ninth Circuit's decision in Harvey written by Justice O'Connor where in that case there was a challenge to Richardson on the ground that Richardson didn't consider the argument that felonies that were not felonies of common law were covered by the other crimes exception. Justice O'Connor properly and in keeping with many other commentaries and decisions addressing matters that the Supreme Court has looked at decided with the panel that because the arguments presented had not been presented that that panel would look at them again and they did and they did not change the holding in Richardson. The argument that we have on Richardson is two-fold. One directly on Richardson and one, I think, that is encompassed within Richardson. There's the abridged argument, which I'll get to perhaps second, but then there's the Eighth Amendment and the abridged argument that we make was in no way addressed by the Supreme Court. We've looked everywhere in the papers. It was not presented and therefore just as the Harvey Court considered it we think this Court is empowered to consider it. Certainly the Supreme Court would be empowered but this Court in the first instance... There's a lot of discussion nowadays about the extent of precedent and so on, but it does concern me if and of course Justice O'Connor was certainly entitled to do whatever she chose in Richardson along with that panel, but when you come at a direct holding of the Court which is that disenfranchisement of felons is permitted by the Fourteenth Amendment and then you say, oh, but they didn't argue such and such that sounds to me very much like the cases where the Court says we may not have discussed an issue of jurisdiction in a previous case but that means we didn't decide it, but that is a separate, completely separate issue that doesn't go to the fundamental interpretation of the text. And the same argument was made in Harvey and the panel and Justice O'Connor, not obviously sitting as a Supreme Court Justice, but sitting by designation on the Ninth Circuit thought, consistent with many other authorities in our briefs, that the Court at the Circuit level we would have submitted even at the District Court level, but at the Circuit level has the power to look at this 50-year-old or 45-year-old precedent with an argument that everyone concedes was not presented to the Court. Do you think that which of your cases suggests that the power to look at that argument is the power to contradict the holding of Richardson? I don't think it would be a contradiction of the holding if the argument was not considered, and I think Harvey is that case. And what other cases have you, do you have any Supreme Court authority for that? One second, Your Honor. The Cooper Industries case, Your Honor, 543 U.S. 157. Questions which merely lurk in the record, neither brought to the attention of the Court nor ruled upon are not to be considered as having been so decided. Texas v. Cobb, 532 U.S. 162. I won't read all the quotes. They're in our briefs.   532 U.S. 162. Questions which merely lurk Truck Lines, 344 U.S. 33. Each of them go to the power of the courts to look, and those are Supreme Court cases. The best Circuit Court case I think I can give you is Harvey, which is directly on point, given that it's the exact same provision. Okay. I'm happy to go on to the merits of the abridged, perhaps time permitting, but I do want to go to the Eighth Amendment, which is not a challenge to Richardson. As counsel I think acknowledged, there is nothing in Richardson that bars consideration of other provisions of the Constitution, and Richardson itself was remanded back to the District Court for consideration of equal protection type claims. The claim there was that some areas of California were enforcing these laws and some weren't, and they were all doing it differently. In the interim, California changed its law and removed effectively felon disenfranchisement. But there's that case, I think Shepard itself, that looked at, that was a reenfranchisement case, but considered these issues. So, whatever you come to the conclusion on on the abridged claim, there are the other provisions of the Constitution that are directly relevant, and that includes the Eighth Amendment. Richardson came out in 1974, which was seven years after the Second Circuit, through Judge Friendly, considered the very same issue. And in that case, the Green case, the Second Circuit noted that at that time 41 jurisdictions or sorry, 42 states had permanent felon disenfranchisement laws, and that court ruled that at that time there was no national consensus against permanent disenfranchisement. The numbers today are more than reversed. In the 50 years since Richardson, the trend has been overwhelmingly toward what we are seeking here, which is that at completion of sentence felons, former felons, are given the right to vote and participate in society. There are some differences of how the two parties have presented the state of the law. We think it quite clear that more than 40 states plus D.C. now do not permit lifetime disenfranchisement for any offenses, with some exception in a limited number of states, frankly not in most, for government-related or election-related fraud, vote stealing or the like. You can go through all the numbers and go back and forth, but while the states presented several charts, the most useful, I think, actually to look at is just to take it on their chart, which is at page 53 of their reply brief before this court filed on November 8. And if you go through their chart, although they do point out that there are some states like Vermont and Maine that even allow for voting while incarcerated, if you go through and you look at the first five boxes on their chart, they too conclude that at least 40 states restore the right to vote once a convicted felon has completed his or her sentence, and in many of them before even the expiration of parole or probation, which is not something that we're seeking to accomplish through this case or through the class that's been certified. There is some discussion in the papers over penalty and punishment and what is it to disenfranchise somebody for the rest of their life for a crime that they might have committed at a very young age. And again, Mississippi has a wide swath of crimes that they cover. They range from passing a bad check when you're 18 years old to something called timber larceny, which is stealing some couple hundred dollars worth of wood. All of those are treated with lifetime disenfranchisement, and all of those, if you look through the Re-Admission Act, which is discussed in depth in our brief, as well as other cases, histories, passages, but the notion that losing the right to vote for the majority of your life after you've completed otherwise your sentence, what you owe society, can only be called punishment both historically and under the courts test, the Supreme Court's test in the six-part test in the Mendoza-Martinez case, which we walk through in our briefs and our colleagues respond to. But any way you slice it, this severe penalty, this severe punishment is punishment and should be treated as such, and therefore comes under the guise of the Eighth Amendment. I'll address very quickly the very, very limited Supreme Court authority on this, which I think is the Tropp case. That's discussed in the briefs. There is no way to read the passage other than that the discussion of whether or not a bank robber who is barred from voting is being punished or not punished is in the form of a hypothetical and facts not before the court was clearly dicta, and if the entire passage at pages 96, 97 of the decision are read, it is clear that the court actually hypothesizes it both ways and goes to whatever the actual intent was of removing the right to vote to the hypothetical bank robber. So Tropp or trope itself is not a bar on this. There is significant history in the Supreme Court, in the recent Supreme Court, of the court considering Eighth Amendment challenges. Again, we don't believe Richardson even thought about the Eighth Amendment. The argument wasn't presented. When was the last time an Eighth Amendment challenge succeeded in the court? When was the last time an Eighth Amendment challenge succeeded? Normally, of course, it pertains to the extent of the punishment. Sliding scale. It's been applied to death subject to the death penalty. It's been applied to the length of confinement for juveniles and whether or not juveniles can be given life sentences. And we submit it should be applied here. If I had a Supreme Court precedent that would have been applied to voting, I would tell you there is none. But the question comes to whether... But that's the extent of Eighth Amendment actual operative decisions at this point. It relates to conditions of confinement. It relates to methods of death penalty. It all relates to matters of punishment. But again, the history of the specific provision 241, under the Readmission Act, Mississippi could not have been readmitted to the Union and could not have been readmitted to the Union with a disenfranchised provision for felons without the understanding that it was punishment. That is what the Readmission Act says. And it's not just that it says it. That's a reflection of what everyone at the time believed disenfranchising felons for life was. It was punishment. The Eighth Amendment does not on its face... I wasn't really questioning that. I was just thinking that the extent we have been getting Eighth Amendment challenges in civil cases and fines and other kinds of punishments and we normally reject them. I understand, Your Honor. They're rejected on all different grounds. I think often that there is no national consensus of the strength of this sort. They're rejected because we say they're not sufficiently punitive or they are not sufficient. I think that's the only one that I think might pertain to these kinds of post-conviction type situations. And it certainly is a sliding scale and again it may be that there, which I think the state concedes, that I have a stronger argument on some crimes than other crimes. Our case is brought on behalf of the whole class. The class is represented by individuals. The class includes individuals who have committed in the past a range of crimes. But the district court's error here was not even substantively looking at any of what we're discussing. The district court erred by ruling that the 14th Amendment is interpreted by Richardson barred an Eighth Amendment claim and that was clear error. There is an Eighth Amendment claim here. We believe it is a successful one. We believe for the whole class but again even by I think the state's admission in their papers before this court and below there are crimes here to couple with lifetime disenfranchisement can only be particularly in the context of what the other 49 states have done. There are two that are like Mississippi so I'll say the other 47 plus the district. I'm just for the sake of rhetoric are we going to decriminalize marijuana on the same basis that there's a trend within the states to decriminalize marijuana and therefore the Controlled Substances Act is unconstitutional? Your Honor I'm unaware of any Eighth Circuit jurisprudence that has deemed certain crimes themselves to fall. Well anyway I'm just that was just rhetorical. No I and I hear you Your Honor and let me address it because counsel may address it on rebuttal but there is this slippery slope argument and I'm well aware of it and they say well if these citizens who happen to be former felons are restored their right to vote how about guns? How about serving on a jury? What I would say to you there is there is no national consensus so there is no argument for guns or jury I'd also say just on the simple facts of it losing your right to vote is of a very different nature than certainly jury and so I hear the slippery slope it's why courts just decide what's in front of them but the circumstances here are just overwhelming in terms of what the other 47 states have done and even during the pendency of this case both Florida and Nevada have moved from one column to the other in terms of. Did Judge Jordan certify your class? He did. Okay I couldn't. He did. He issued a class certification order acknowledging they were a certified class he never issued a final order with all the parameters of it which I think was simply an oversight we've all been moving forward under the assumption that it's a fully certified class. He had some questions over the Harness case versus the Hopkins case which had been consolidated and how that affected everything I think the cases actually have now been separated in front of this court and so those issues are no longer present. What do you say to the standing argument on section 253? So the the Secretary of State's involvement in all aspects of the disenfranchisement. But isn't it correct I mean isn't it absolutely correct that whether you grant a declaratory judgment against the Secretary or whether you even in an official capacity or whether you enjoin the Secretary those edicts have absolutely no effect with regard to the legislative reenfranchisement process. I think it probably depends on what the order is your honor. This court in KP and other cases have acknowledged that you don't have to find the sole person involved in a certainly has responsibilities with respect to elections but this person Secretary of State has no responsibility or authority with respect to reenfranchising which is your claim. I don't believe that's correct your honor. This Secretary whoever he or she might be at the time there will be a change. The Secretary publishes all the laws. If you're saying the Secretary's responsible for providing the list of reenfranchised felons to the counties or whatever that's fine the Secretary probably also is responsible for publishing all the laws but that doesn't mean you can sue the Secretary of State to attack the legislature. The Secretary is responsible for maintaining the SEAMS data the Secretary is responsible for training the local. That's what I'm telling you and that has nothing to do with the legislative function under 253. The Secretary is not the legislator but the Secretary instructs the entire So what can you tell the Secretary to do? To enfranchise people? The court could and again this gets to remedy which has not been briefed either below or here. But that's redressability as a part of standing. This court could if or the district court could if 253 is invalid although we start with 241 I'm asking you about standing of your class to challenge 253 via a lawsuit against the Secretary of State. The Secretary of State can be ordered that absent the implementation by the state of an appropriate replacement for 253 be it because it's discretionary which is our third count a violation of the first amendment which is our fourth or the racial count and I do if I That's absurd. That means that you could sue the county election official and say that each county election official may not enforce the felon disenfranchisement unless the state legislature acts that is similar to the problem in the last case we had where the contention was made you can't you can't have a reverse imputation of knowledge likewise under ex parte young you can't have sue the lowest person on the totem pole of state enforcement and get to the legislative decision We didn't sue the lowest person on the totem pole. We sued the Secretary of State who is the one who instructs throughout the state and trains whether or not somebody is entitled to vote be it through disenfranchisement or proper reenfranchisement 253 is throughout the Secretary's material both training pamphlets I'm not aware of all that and by changing that and saying that this cannot be enforced until standards or whichever of the claims is violated and I if I could I know my light is up What are you going to say whatever you have not said before? I'll say one thing your honor which is this discussion of the effects and application under Cotton and Hunter the presentation by the state and the state's papers That's equal protection Yes under the equal protection and the application of this courts and footnote 9 of Hunter the presentation ignores the fact that the impact of 253 which is essentially no one gets reenfranchised 18 people in 6 years that's effectively a zero disproportionately in a huge manner affects the black citizens of Mississippi and that is the effect currently of 253 and frankly of 241 but specifically of 253. Thank you Okay thank you Alright Ms. Noble Please the court I'll be brief on rebuttal I want to address the readmission act issue I think we addressed it in the briefs but I'll say one additional point about that the same congress that passed the 10 states readmission act saying that states can disenfranchise felons also approved Mississippi's 1868 constitution which at that point had a broader felon disenfranchisement provision I'll go to the next point also on the 8th amendment. The state has never conceded that the 8th amendment even applies to any of the felonies the plaintiffs have asserted our only point in the brief was the point that you made Judge Jones which is that this is a class action facial challenge. The 8th amendment or felony disenfranchisement has always been considered a collateral consequence to a felony conviction just like the exclusion of felons from the jury box and just like the loss of rights that are otherwise protected by the 2nd amendment. So I'll conclude by reiterating my request that this court affirm the district court with respect to the claims that the district court dismissed but reverse the district court as to the single claim that the district court left pending which is the race based equal protection challenge to section 253. If this court does not have any further questions. I guess not. Thank you. Thank you.